# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

─────────────

No. 16-10347

─────────────

STEPHANIE ODLE, on behalf of herself and all others similarly situated, et al;

      Plaintiffs

WAL-MART STORES, INCORPORATED,

      Defendant - Appellee

v.

ORALIA FLORES; ROSIE LUJAN; ALICE BISCARDI; DEBBIE HAYWORTH; BRENDA HENDERSON; LINDA MCFADDEN; MARGARITA MURILLO; SANDRA PHELAN, on behalf of themselves and others similarly situated,

      Movants - Appellants

─────────────

Appeal from the United States District Court
for the Northern District of Texas
(683 Fed. Appx. 288, March 27, 2017)

ON PETITION FOR REHEARING EN BANC

─────────────

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:

      Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED.  The court having

been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

In the poll, 5 judges vote in favor of rehearing en banc, and 9 vote against. Voting in favor are Judges Jolly, Jones, Smith, Clement, and Owen. Voting against are Chief Judge Stewart, Dennis, Prado, Elrod, Southwick, Haynes, Graves, Higginson, and Costa.


ENTERED FOR THE COURT:

_____
Thomas M. Reavley
United States Circuit Judge

JAMES E. GRAVES, JR., Circuit Judge, joined by REAVLEY and ELROD, Circuit Judges, concurring in denial of rehearing *en banc*:

## BACKGROUND

In this case, the panel merely followed precedent. We faced the issue of whether, following a Rule 41(a)(1)(A)(ii) stipulated dismissal with prejudice by a named plaintiff in a class action, a district court had jurisdiction to entertain a motion to intervene by absent class members seeking to appeal an earlier denial of class certification. *See Odle v. Flores*, 683 F. App'x 288, 289 (5th Cir. 2017). We held only that the district court had jurisdiction to consider the motion. *Id.* We did not "express any opinion on whether intervention [was] warranted." *Id.*

In reaching that conclusion, we followed *Sommers v. Bank of America*, 835 F.3d 509 (5th Cir. 2016). In *Sommers*, a shareholder sought to intervene in a lawsuit after entry of a stipulated dismissal. *Id.* at 511. We affirmed the district court's denial of the motion to intervene, finding that the motion was untimely. *Id.* at 513. However, we rejected the argument that "intervention is always improper after a case has been dismissed." *Id.* In a substantive footnote, we reconciled that conclusion with earlier Fifth Circuit cases. *Id.* at 513 n.5.

Appellant timely filed a motion for rehearing *en banc*, which we now deny.

## DISCUSSION

The dissenting opinion criticizes both *Odle* and *Sommers*, arguing that they are contrary to Supreme Court precedent, our prior Fifth Circuit case law, a prominent treatise, and other circuits' decisions.[1] With respect, the

---

[1] The dissenting opinion additionally asserts that *Odle* and *Sommers* are contrary to Rule 23(e), which states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Here, no party has

dissenting opinion fails to cite any precedent showing that either *Sommers* or *Odle* are error.

## I. *Sommers* is not in conflict with any court's precedent.

*Sommers* only rejected the broad proposition that intervention is always improper after a case has been dismissed. 835 F.3d at 513. The dissenting opinion contends that conclusion "contradicted a long train of authorities that carve out very narrow exceptions to parties' ability to dismiss cases voluntarily without court approval." *Sommers* is not in conflict with any of the dissenting opinion's cited authority.

### 1. *Sommers* does not conflict with Supreme Court precedent.

The dissenting opinion claims that *Sommers* does not follow *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). However, *Cooter* does not address the issue presented in *Sommers.*

In *Cooter*, the Supreme Court faced the issue of "whether petitioner's dismissal of its antitrust complaint [without prejudice] pursuant to [Rule 41(a)(1)(A)(i)] deprived the District Court of the jurisdiction to award attorney's fees." *Id.* at 393-94. *Cooter* has nothing to do with a court's jurisdiction to entertain post-dismissal motions to intervene after a stipulated dismissal with prejudice under Rule 41(a)(1)(A)(ii). Nor does it address the unique circumstances presented in a class action lawsuit.

Nonetheless, *Cooter* is cited as "identif[ying] certain collateral issues that a court may handle following a stipulated dismissal, including Rule 11 sanctions, imposition of costs, attorney's fees and contempt sanctions." That list, however, must be viewed in light of the facts presented in *Cooter*. The

---

challenged the named plaintiffs' ability to settle their claims without court approval. The only issue is whether the district court had jurisdiction to consider the motion to intervene *post*-dismissal. Rule 23(e) is simply inapplicable to the issue before us.

Supreme Court listed these collateral issues as examples of Rule 11-like issues that do not require a judgment on the merits, and therefore do "not deprive the plaintiff of his right under Rule 41(a)(1) to dismiss an action without prejudice." *Cooter*, 496 U.S. at 396. This was of particular importance in *Cooter*, where the plaintiff exercised its unilateral right to dismiss without prejudice prior to any merits determination.

Neither of the plaintiffs in either *Sommers* or *Odle* exercised the right found in Rule 41(a)(1)(A)(i). Nor did either dismiss without prejudice. Instead, both dismissed with prejudice under a Rule 41(a)(1)(A)(ii) joint stipulation. Nothing in *Cooter* suggests that the same importance of the right to unilaterally avoid a merits determination underlies a Rule 41(a)(1)(A)(ii) dismissal with prejudice. Further, nothing indicates that the listed collateral issues are an exhaustive list of issues proper for consideration after such dismissals. *Cooter* is not controlling on the issue presented.

Not only is *Cooter* not controlling, but Supreme Court precedent indicates that *Sommers* was rightly decided. In *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), the Supreme Court held that a putative class member could appeal the denial of a class certification by intervention, after entry of a judgment in favor of the named plaintiff, but before the statutory time for appeal had run. *Id.* at 396. While set in a different procedural posture, *McDonald* expresses the Court's concern that putative class members should have a chance to appeal an adverse class determination once it is clear that their interests will no longer be protected by the named plaintiffs. *Id.* at 392-96.

Three years later, in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), the Court again recognized "the rights of putative class members as potential intervenors." *Id.* at 331. Though the Court ultimately determined

the narrow issue presented by considering "the private interest of the named plaintiffs," *id.* at 332, the Court noted that "[a] district court's ruling on the certification issue is often the most significant decision rendered in these class-action proceedings." *Id.* at 339. The Court then expressed concern about defendants attempting to "buy off" the named plaintiffs, and noted that forcing putative plaintiffs to each bring their own action "obviously would frustrate the objectives of class actions . . . [and] invite waste of judicial resources." *Id.* Moreover, the Court stated that it "view[s] the denial of class certification as an example of a procedural ruling, *collateral to the merits of a litigation*, that is appealable after the entry of a final judgment." *Id.* at 336 (emphasis added); *see also id.* (indicating that an appellate court can review a denial of class certification without "passing on the merits of the substantive controversy").

*Sommers* is not in conflict with *Cooter*, and is in fact supported by the Supreme Court's decisions in *McDonald* and *Roper*.

### 2.    *Sommers* does not conflict with our precedent.

The dissenting opinion next asserts that *Sommers* is contrary to a number of our cases. Again, *Sommers* is not in conflict with the cited precedent.

First, in *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir. 1970), this court permitted a law firm to intervene post-dismissal in order to protect an interest in attorneys' fees. *Id.* at 54. The dissenting opinion cites *Gaines* for the proposition that "the case having been dismissed by joint consent, the intervention falls with it." This quote is taken out of context. In fact, this language is the *Gaines* court's framing of the losing argument. *Gaines*, 434 F.3d at 54. The dissenting opinion further attempts to distinguish *Gaines* on the grounds that "[d]isposing of the *res* was a collateral matter within the understood scope of Rule 41(a)." Even if true, nothing in *Gaines* supports the

6

broad conclusion that motions to intervene are always improper post-dismissal.

Second, in *Ford v. City of Huntsville*, 242 F.3d 235 (5th Cir. 2001), this court again granted a post-dismissal right to intervene, this time in order to challenge a confidentiality order. *Id.* at 238. *Ford*, therefore, shows our court recognizing that intervention can be proper post-dismissal, as recognized in *Sommers*. *See* 835 F.3d at 513 n.5. The dissenting opinion distinguishes the holding in *Ford* by asserting that the challenge to the confidentiality order was a "matter collateral to the merits." Even if true, nothing in *Ford* supports the conclusion that *Sommers* erred in finding that intervention is potentially proper post-dismissal.

Third, in *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458 (5th Cir. 2010), we held that after a Rule 41 stipulated dismissal a court only maintains jurisdiction to enforce a settlement agreement if the parties "agree to such jurisdiction." *Id.* at 463. *SmallBizPros* had nothing to do with a court's jurisdiction to hear a post-dismissal motion for intervention. Nonetheless, the dissenting opinion finds it "embarrassing" that our court has not resolved "the intracircuit conflict between *SmallBizPros* and *Sommers*," which the dissenting opinion claims the D.C. Circuit recognized in *In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017). This is a mischaracterization of the D.C. Circuit's view of our cases. The D.C. Circuit merely noted that *Sommers* "criticized" *SmallBizPros* for "its 'imprecise language.'" *Brewer*, 863 F.3d at 868-69. Notably, in a concurring opinion in *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322 (11th Cir. 2017), Judge Anderson recognized that the principles set out in *SmallBizPros*, *Sommers*, and *Odle* can be reconciled. *See id.* at 1327 (Anderson, J., concurring) (reconciling nearly identical issues).

7

Fourth, the dissenting opinion quotes *Non Commissioned Officers Ass'n of U.S. v. Army Times Publishing Co.*, 637 F.2d 372 (5th Cir. Unit A Feb. 1981), for the proposition that after a Rule 41(a)(1) dismissal, "'there is no case in which [the party] can intervene.'" However, the cases *Army Times* relied on to support that overbroad rule only stand for the proposition that a person may not intervene if the original, underlying case was jurisdictionally defective. *See Army Times*, 637 F.3d at 373; *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980) ("There is no right and no obligation to intervene in a [jurisdictionally] defective suit."); *Kendrick v. Kendrick*, 16 F.2d 744, 745-46 (5th Cir. 1926) (denying intervention where court did not have jurisdiction over original lawsuit because of lack of indispensable parties).

Moreover, *Army Times'* broad statement is directly contrary to a prior Fifth Circuit case clearly allowing post-dismissal intervention. *See Gaines*, 434 F.2d at 54. As the dissenting opinion acknowledges, "under the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect." *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000).

Fifth, the dissenting opinion relies on *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287 (5th Cir. 2016), for the proposition that post-dismissal a court "lacks jurisdiction over merits issues such as a 'request for a modification of the original decree.'" In *Bechuck*, we held that a district court lacked jurisdiction to place restrictions on the plaintiff's ability to refile his claim after the plaintiff voluntarily dismissed his case without prejudice. 814 F.3d at 289-90. At issue, like in *Cooter,* was the plaintiff's right to dismiss his claim without prejudice. *Id.* at 291-94, 299-300. This concern is absent from either *Sommers* or *Odle. Bechuck* is distinguishable.

*Sommers* simply does not misread, and is not in conflict with, our prior law. In fact, nothing in the above cited cases authoritatively suggests the radical rule that intervention is *always* improper after dismissal. This is all that *Sommers* rejects.

### 3. *Sommers* is not in conflict with our sister courts.

The dissenting opinion further argues that *Sommers* is "out of step" with our sister courts' precedent. Again, the dissenting opinion fails to cite any case establishing that conflict.

In *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009), the Seventh Circuit reversed a district court's grant of a post-dismissal motion to intervene on the grounds that the *intervenor lacked standing*. *Id.* at 1065. The only mention of the effect of a Rule 41(a)(1) stipulated dismissal is in the court's conclusion that a "sua sponte postjudgment modification of a protective order does not fall within the court's ancillary jurisdiction." *Id.* at 1078. However, this is not in conflict with *Sommers*. The *Bond* court was only making the point that after a stipulated dismissal the district lacked the "inherent power" to amend the confidentiality order "sua sponte." *Id.* Nonetheless, *Bond* suggests that if the intervenor had shown standing, the district court would have had jurisdiction to grant the motion despite the fact that intervention would have "disturb[ed] the final adjudication of the parties' rights." *See id.* at 1070-71. *Bond* in no way conflicts with *Sommers*.

In *Anago Franchising, Inc. v. Shaz, L.L.C.*, 677 F.3d 1272 (11th Cir. 2012), the Eleventh Circuit addressed the issue of whether the district court retained jurisdiction to enforce the parties' settlement agreement. *Id.* at 1275. *Anago* is essentially the Eleventh Circuit's analog to *SmallBizPros*. As noted above, the concurring opinion in *Love* recognized that the principles set out in *Anago* and *Sommers* are reconcilable. *See Love*, 865 F.3d at 1327 (Anderson,

J., concurring). Even more pertinent to the issue before us—whether this Court should re-hear *Odle en banc*—Judge Anderson recognized that *Anago* is distinguishable from the facts presented in *Odle* because it "lacked the class action context" and did not "concern a motion to intervene for the purpose of appealing an adverse class certification decision." *Id. Anago* does not conflict with either *Sommers* or *Odle*.

Two other cases cited by the dissenting opinion address motions to intervene after the plaintiff voluntarily dismissed their claims pursuant to Rule 41(a)(1)(A)(i). *See Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 545 (4th Cir. 1993); *United States v. Ford*, 650 F.2d 1141, 1142 (9th Cir. 1981). Neither case addresses the issue of a court's jurisdiction to consider a motion to intervene after a stipulated dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii). Neither *Ford* nor *Marex* are in conflict with *Sommers*.

The final three opinions cited by the dissenting opinion in fact have nothing to do with a motion to intervene at all. *See In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 164 (3d Cir. 2008) (considering issue of whether district court had jurisdiction to strike notice of Rule 41(a)(1)(A)(i) dismissal without prejudice in order to enter order dismissing with prejudice); *Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003) (considering issue of whether the filing of a voluntary dismissal under Rule 41(a)(1)(A)(i) immediately began the 30-day window to file a notice of appeal); *Smith v. Dowden*, 47 F.3d 940, 941 (8th Cir. 1995) (considering issue of "whether a [bankruptcy] creditor who has successfully withdrawn its claim before the trustee has filed an adversarial proceeding has irrevocably waived its Seventh Amendment right to trial by jury").

There is simply no indication that *Sommers* is out of step with any of our sister courts' precedent.

## II.  Sister court opinions support *Odle's* holding.

In fact, contrary to the dissenting opinion's contention that *Odle* and *Sommers* are in conflict with our sister courts, and as the dissenting opinion candidly admits, "[b]oth decisions have been favorably cited in other circuits." Indeed, a majority opinion from the D.C. Circuit and a concurring opinion from the Eleventh Circuit have reached *Odle*'s conclusion.

In *In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017), the D.C. Circuit addressed the exact issue presented in *Odle*, holding that the court had jurisdiction to consider the motion to intervene. *Id.* at 868-70. The court reached that conclusion by reasoning that "mootness, albeit accelerated by the immediacy of a stipulated dismissal, is what gives a dismissal pursuant to Rule 41(a)(1)(A)(ii) its jurisdictional effect." *Id.* at 870. "And if a motion to intervene can survive a case becoming otherwise moot, then so too can a motion to intervene survive a stipulated dismissal." *Id.*

The *Brewer* court further noted that permitting courts to consider such motions serves to advance the objectives of class action litigation:

> [I]f a stipulated dismissal deprived the court of jurisdiction to hear a motion for intervention filed by absent members of a putative class, then a class action defendant could simply "'buy off' the individual private claims of the named plaintiffs" in order to defeat the class litigation, a strategy the Supreme Court has said "would frustrate the objectives of class actions" and "waste . . . judicial resources by stimulating successive suits" "contrary to sound judicial administration."

*Id.* (quoting *Roper*, 445 U.S. at 338-39).

Subsequently, in *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322 (11th Cir. 2017), the Eleventh Circuit faced the same issue presented in *Odle* and *Brewer*. *Id.* at 1324. Ultimately, the *Love* majority did not reach the issue of whether

the district court had jurisdiction to consider the putative class members' motion to intervene because the court found the notice of appeal untimely and therefore the motion to intervene was moot. *Id.* at 1324-26. Nonetheless, a concurring opinion stated that "putative class members who move to intervene <u>and</u> file a [timely] notice of appeal . . . from the final judgment effected by a [Rule 41(a)(1)(A)(ii)] joint stipulation," would not be "foreclosed from exercising their conditional right to intervene." *Id.* at 1326 (Anderson, J, concurring). "This understanding relie[d] upon [Judge Anderson's] agreement with the holding and rationale of" *Brewer*. *Id.*

Moreover, the concurring opinion in *Love* noted that concluding that a Rule 41(a)(1)(A)(ii) stipulated dismissal jurisdictionally barred absent class members from appealing a denial of class certification "would be a matter of significant concern because of the obvious risk of collusion." *Id.* at 1328 n.4.

> The defendant in class action cases has an obvious and strong incentive to insist on a joint stipulation of dismissal that fails to protect the rights of putative class members, thus accomplishing not only a settlement with the named plaintiff, but also—if the conditional rights of putative class members under [*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977)] were eviscerated—effectively ending the often more dangerous class action. Similarly, the settling named plaintiff may have no incentive to protect the rights of putative class members. Indeed, elimination of the class action can serve as leverage for the named plaintiff to exact a more favorable settlement for its own benefit.

*Id.*

Accordingly, the only sister court majority to address the issue in *Odle* has determined that such a rule is sound and in fact supported by Supreme Court precedent. *See Brewer*, 863 F.3d at 870 (quoting *Roper*, 445 U.S. at 338-

39). A concurring judge on the Eleventh Circuit has likewise reached the same conclusion. *See Love*, 865 F.3d at 1328 n.4 (citing *McDonald*, 432 U.S. at 385).

## CONCLUSION

Neither *Sommers* nor *Odle* is in conflict with any authority from either the Supreme Court, our own court, or our sister courts. To the contrary, overruling *Odle* and *Sommers* would create a circuit split on the issue presented. I respectfully decline the dissenting opinion's invitation to do so and concur in the court's denial of *en banc* review.

EDITH H. JONES, joined by JOLLY, SMITH, CLEMENT and OWEN, dissenting from denial of rehearing en banc:

This "unpublished" opinion is not precedential in the Fifth Circuit, *see* 5th Cir. Rule 47.5, but it depends on one of our precedential opinions. *Sommers v. Bank of Am.*, 835 F.3d 509 (5th Cir. 2016). Both decisions have been favorably cited in other circuits. *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322 (11th Cir. 2017); *In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017). This is most unfortunate. At a minimum, *Sommers* contradicted a long train of authorities that carve out very narrow exceptions to parties' ability to dismiss cases voluntarily without court approval. Fed. R. Civ. P. 41(a)(1)(A). At worst, *Odle* creates a class action exception to the finality of stipulated dismissals that conflicts with both Rules 41(a)(1) and 23(e). I respectfully dissent from the denial of en banc rehearing.

To recap very briefly, this case proceeded as a putative Texas-wide class action following the Supreme Court's denial of a nationwide Title VII class in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011). During several more years of litigation, the Fifth Circuit refused to grant interlocutory review of the district court's denial of class action status in *Odle*. The named individual plaintiffs then settled with WalMart and the parties filed an agreed stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A). Within days, the same plaintiffs' attorney sought "intervention" on behalf of a new group of would-be class representatives (the "Intervenors") solely for the purpose of appealing the denial of class certification. It need hardly be said that if these plaintiffs' claims had been filed within the statute of limitations, they could have simply commenced a new case. *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985). Intervention is the

only way they could perpetuate claims otherwise barred in a case that was otherwise dead.

Based on then-governing precedent, the district court held that the case had been finally closed and disclaimed jurisdiction to decide the motion to intervene.

On appeal, the *Odle* panel reversed and remanded, concluding that the district court had jurisdiction to decide whether new plaintiffs could intervene to keep the class action litigation alive by appealing the denial of certification. *Odle v. Wal-Mart Stores, Inc.*, 683 F. App'x 288 (5th Cir. 2017). The panel relied on a newly-issued Fifth Circuit decision, *Sommers,* which "rejected the 'suggest[ion] that intervention is always improper after a case has been dismissed.'" *Odle*, 683 F. App'x at 289 (quoting *Sommers*, 835 F.3d at 513). One cannot criticize the *Odle* decision, therefore, without also critiquing *Sommers.*

*A.* The Governing Rules

Fed. Rule Civ. Proc. 41(a)(1)(A)(ii) states:

**(1) *By the Plaintiff***
    **(A)** *Without a Court Order.* Subject to Rule[ ] 23(e) . . . the plaintiff may dismiss an action without a court order by filing: . . .

        (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. Rule Civ. Proc. 23(e) states:

**(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a *certified* class may be settled, voluntarily dismissed, or compromised only with the court's approval.

(emphasis added). Without doubt, Rule 23(e) is an exception that prohibits parties from dismissing a *certified* class action by stipulation without court approval, but equally without doubt, non-certified classes are outside this exception. The following discussion explains how *Odle* and *Sommers* have misread both Rules.

*B.* Rule 41(a)(1)(A) Stipulated Dismissals

*Sommers* arose from a pro se appeal on this court's summary calendar. The case was decided without articulate briefing or the benefit of oral argument. *Sommers* dealt with the consequences of a stipulated dismissal largely in a footnote and reached the conclusion that "[t]hough appellees are incorrect in suggesting that intervention is always improper after a case has been dismissed," it is a factor weighing against the timeliness of a claimed intervention as of right under Fed. R. Civ. P. 24(a)(2). 835 F.3d at 513 & n.5.

According to longstanding authority, a case goes away after a stipulated dismissal, and it's as if it was never filed. The court has no say in the finality of the parties' resolution of their dispute, unless they so provide. *See* Fed. R. Civ. P. 41(a)(1)(B). The district court retains jurisdiction only to handle collateral issues, like attorneys' fees, sanctions, or confidentiality orders, but not to handle motions that could reopen the merits. Because the parties have elected to dismiss pursuant to Rule 41(a)(1), it is they, and not the district court, that have terminated the lawsuit, leaving nothing for the court to resolve on the merits of the prior dispute.

In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96, 110 S. Ct. 2447, 2455-56 (1990), the Court identified certain collateral issues that a court may handle following a stipulated dismissal, including Rule 11 sanctions, imposition of costs, attorney's fees and contempt sanctions. None of these collateral matters implicates the merits of the dismissed dispute.

Wright & Miller accordingly set out the governing principles for Rule 41(a)(1) dismissals:

> [A]s numerous federal courts have made clear, a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed. After the dismissal, the action no longer is pending in the district court and no further proceedings in the action are proper.
> The general rule is that a dismissal without prejudice is neither final nor appealable. Thus, settlement agreements, generally, cannot be enforced by the district court from which the action was dismissed. . . . The Supreme Court has held that "a federal court may consider collateral issues after an action is no longer pending." Lower courts have extended this principle to apply to motions for attorney's fees and costs. . . . There is a further exception to the ban against further proceedings following dismissals for Rule 11 proceedings for conduct that took place before dismissal. When fewer than all defendants are dismissed voluntarily, however, the court retains plenary power to reinstate those defendants until the claim has been adjudicated as to the remaining defendants.

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2367, 559-65 (3d ed. 1998) (footnotes, citing dozens of federal court decisions, omitted).

Before *Sommers,* this court repeatedly acknowledged the narrow exceptions to the termination of jurisdiction following a stipulated dismissal. *See, e.g., Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016) (post-stipulated dismissal, court lacks jurisdiction over merits issues such as a

17

"'request for a modification of the original decree'" (quoting *Cooter & Gell*, 496 U.S. at 395, 110 S. Ct. at 2455)); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970) ("[T]he case having been dismissed by joint consent, the intervention falls with it.");[1] *see also Non Commissioned Officers Ass'n of U.S. v. Army Times Publ'g Co.*, 637 F.2d 372, 373 (5th Cir. 1981) (following a Rule 41(a)(1) dismissal, "there is no case in which [the party] can intervene").[2] *Compare Ford v. City of Huntsville*, 242 F.3d 235 (5th Cir. 2001) (following the entry of both a stipulated dismissal and a confidentiality order, a local newspaper was permitted to intervene on a matter collateral to the merits—seeking to unseal the confidentiality order).

Particularly noteworthy in this uniform line of decisions is *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458 (5th Cir. 2010). In that case, the court explained why a district court lacked jurisdiction to enforce the parties' settlement agreement following their stipulated dismissal:

> Because filing a voluntary stipulation of dismissal under Rule 41(a)(1)(A)(ii) is effective immediately, any action by the district court after the filing of such a stipulation can have no force or effect because the matter has already been dismissed by the parties themselves without any court action. Any dismissal order entered by a district court after the filing of a voluntary dismissal is "superfluous." *Meinecke*, 66 F.3d at 82. Therefore, to ensure that jurisdiction is retained so a district court has the power to

---

[1] *Gaines* nevertheless allowed an attorney, not a party to the case, to intervene only to claim a share of fees that were held in escrow by the court following the parties' settlement. Disposing of the *res* was a collateral matter within the understood scope of Rule 41(a).

[2] Both the Federal Circuit and 11th Circuit have approved of and understood *Non Commissioned Officers* to recite "well-settled law in the Fifth Circuit that '[a] prerequisite of an intervention (which is an ancillary proceeding in an already instituted suit) is an existing suit within the Court's jurisdiction.'" *Ericsson Inc. v. InterDigital Commc'ns Corp.*, 418 F.3d 1217, 1222 (Fed. Cir. 2005); *see also Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1275 (11th Cir. 2012).

> enforce the terms of a settlement agreement, either (i) all of the requirements for retaining jurisdiction must be met at the time of filing, or (ii) the filing's effectiveness must be contingent upon a future act (such as the district court issuing an order retaining jurisdiction).

*Id.* at 463. Enforcing a settlement agreement goes to the merits of the parties' dispute and is hardly a collateral matter. Likewise, ruling on these Intervenors' motion to intervene goes to the merits of the controversy as it threatens to revive the otherwise-settled and dismissed class action lawsuit.

That *Sommers* is out of step with the vast majority of circuit precedent on the jurisdictional finality of Rule 41(a)(1) stipulated dismissals—and the narrow, non-merits-related grounds for continuing court jurisdiction—is demonstrated by a number of circuit court cases: *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 547 (4th Cir. 1993); *Bond v. Utreras*, 585 F.3d 1061, 1079 (7th Cir. 2009); *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981); *Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003); *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1275 (11th Cir. 2012).

Very recently, however, the D.C. Circuit has weighed in along the lines of *Sommers* in a case involving attempted post-dismissal intervention by would-be class action representatives. *In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017). The D.C. Circuit decision seems to carve out a special exception to Rule 41 agreed dismissals where members of a non-certified class want to intervene to appeal the trial court's denial of class certification. Similar to what happened in *Odle,* after the district court rejected class certification, the plaintiff acting individually settled with the defendant. The D.C. Circuit noted that the settlement had no res judicata effect on the other potential class members except that they wanted to pursue class certification. The court

concluded that intervention was possible notwithstanding the Rule 41(a)(1) dismissal. *Brewer* could have relied solely on D.C. Circuit authority that permitted an appeal of the denial of a third party's attempt to intervene after a stipulated dismissal. *See Alt. Research & Dev. Found. v. Veneman*, 262 F.3d 406, 410 (D.C. Cir. 2001). The court wrote more expansively, even as it acknowledged that other circuits' case law is united against the proposition that a stipulated dismissal leaves the district court able to reopen the case on the merits. *Brewer* candidly cited cases that rejected attempts to intervene post-stipulated dismissal. *See Brewer*, 863 F.3d at 869 (citing *Marex Titanic, Inc.*, 2 F.3d at 547 (no power "to allow . . . interven[tion] in the defunct action"); *Ford*, 650 F.2d at 1143 (attempt to intervene was moot "[s]ince there is no longer any action in which appellants can intervene, judicial consideration of the question would be fruitless")). To the *Brewer* court, however, stipulated dismissals are no different from dismissals for mootness and the district court is not deprived of "jurisdiction" to rule -- even on a motion that could reopen a case the defendant thought it had finally settled.

In this circuit, *Sommers* and *Brewer* are contrary to precedent nearly a century old: motions to intervene presuppose the continued existence of a case, an ongoing dispute on the merits, into which intervention may occur:

> An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit or action by which a third person is permitted to make himself a party, either joining the plaintiff in claiming what is sought by the complaint, or uniting with the defendant in resisting the claims of the plaintiff, or demanding something adversely to both of them.

*Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926); *see also Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980) (an "existing suit within the court's jurisdiction" is a "prerequisite of an intervention").

That *Sommers* broke with this and other courts' precedents is unfortunate on several levels. First, it creates needless confusion. Our "rule of orderliness" binds this court to the first-decided relevant case, which would render *Sommers* inapplicable to cases of stipulated dismissals in general. But the scope of the rule of orderliness is often contested. Second, it is embarrassing that our court did not resolve the intracircuit conflict between *SmallBizPros* and *Sommers*, which even *Brewer* recognized. *Brewer,* 863 F.3d at 868-69. Third, *Sommers* provided the groundwork for *Odle* to misread not only Rule 41(a)(1)(A) but also to ignore Rule 23(e).

C.     Rule 23(e), the Scope of Court Supervision of Class Action Dismissals

As previously noted, Rule 41(a)(1)(A) allows the parties to dismiss a case without court approval "[s]ubject to Rule[] 23(e) . . . ." Rule 23(e) states that the claims of a "certified class may be settled, voluntarily dismissed or compromised only with the court's approval."

Neither the *Odle* panel nor *Brewer* says anything about this prefatory clause to Rule 41(a)(1)(A). Moore's Federal Practice explains, however, that the interaction of these Rules means that, "prior to certification, Rule 23(e)'s requirements do not provide any obstacle to a voluntary dismissal of class claims." 5 James Wm. Moore, *Moore's Federal Practice* § 23.64[2][a][b], 358-62 (3d ed. 2016). Wright & Miller concur that "settlements or voluntary dismissals that occur before class certification are outside the scope of [Rule 23(e)]." 7B Charles Alan Wright et al., *Federal Practice and Procedure*

§ 1797, 72 (3d ed. 2005). In plain terms, voluntary stipulated dismissals of an uncertified class action suit are to be treated exactly the same as other stipulated dismissals under Rule 41(a)(1)(A), and they become effective immediately without further court order.

This result was deliberately incorporated in the 2003 amendments to Rule 23. As the following quotation explains, the drafters of the amendment were well aware of the amendment's consequences:

> The amended rule thus removes whatever protection class members had from actions taken by named plaintiffs to dispose of class claims prior to certification. While it is true that absent class members will not be "bound" by any precertification dismissals or settlements made by the named plaintiffs, this does not necessarily mean that class members might not be prejudiced by these actions.
>
> . . .
>
> Without precertification protection of the class, defendants faced with a class action may be encouraged to try to avoid class resolution of claims by buying off individual named plaintiffs. These defendants could settle with strong class plaintiffs, and proceed with a class action when faced with weak or ineffectual named plaintiffs. In some situations, the defendants may be able to forum shop settlement claims brought in undesirable forums. The other side of the coin is that plaintiffs with small claims may try to use class allegations to coerce unusually generous individual settlements from defendants. The threat of the expense of a class action may create a potent incentive to settle. Nevertheless, the drafters of the amendment were aware of these concerns, and in fact the original version of the amendment circulated for public comment provided that court approval would be required for precertification settlement or dismissal. After reviewing the comments, the Committee on Rules of Practice and Procedure recommended the present version of the rule, giving the following reasons:

It was hoped that the approval requirement would protect reliance and deter misuse. The comments, however, reflected the uncertainties expressed in the Committee Note. Many observers stated that reliance by absent class members seldom occurs, if indeed it ever occurs. As to the desire to deter misuse of class allegations, the problem is what effective response can be made. *A court cannot effectively coerce continued litigation when all parties have agreed not to litigate further, and it may be unseemly to charge the court with searching out new representatives for the putative class.*

Moore, *supra* § 23.64[2][a], at 23-360 through 23-361 (emphasis added) (footnotes omitted).

In light of the amendment, it is a mistake to invoke pre-2003 case law (as *Brewer* does) to prevent defendants from "buying off" would-be class action plaintiffs by means of stipulated voluntary dismissals. In particular, it is a mistake to equate the situations in *Odle* or *Brewer* with that in *United Airlines v. McDonald,* 432 U.S. 385 (1977), in which the Supreme Court considered only the timeliness, under Fed. R. Civ. P. 24, of the intervenor's post-judgment application to intervene for purposes of appealing the denial of a class action. 432 U.S. at 387. But in *McDonald,* there was no stipulated dismissal, only a district court judgment refusing to certify the class. The judgment left the district court with its ordinary adjudicative power, whereas after a voluntary dismissal under Rule 41(a)(1), "[a] proper notice deprives the district court of jurisdiction to decide the merits of the case." *In re Bath and Kitchen Fixtures Antitrust Lit.,* 535 F.3d 161, 166 & n.8 (3d Cir. 2008) (Scirica, J.) (noting the court's retention of jurisdiction to decide collateral issues specified in *Cooter & Gell*, 496 U.S. at 396-98).

The bottom line is that the district court indeed lacked jurisdiction to rule on the would-be Intervernors' attempt to keep alive a dispute that the parties had the unbridled right to settle. Together, *Odle* and *Sommers* threaten to cause further uncertainty about whether parties may finally dismiss cases voluntarily without risk of further merits litigation.[3] The uncertainty in turn threatens the very possibility of settlements, especially in complex, high-stakes class actions.

I respectfully dissent from our court's refusal to correct these errors en banc.

---

[3] Already, in *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322 (11th Cir. 2017), the majority opinion cited both *Brewer* and *Odle*, and a concurring opinion takes pains to reconcile *Brewer's* allowance of an intervention motion following a stipulated dismissal with contrary law in the Eleventh Circuit, *Anago Franchising, Inc. v. Shaz*, 677 F.3d 1272 (11th Cir. 2012). Under my foregoing analysis, of course, the decisions are irreconcilable.